IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **MAX T. MEHIGHLOVESKY,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | |
| v.                         ) | **4:13-cv-00201-RDP-JEO** |
| ) | |
| **U.S. DEPARTMENT OF HOMELAND** ) | |
| **SECURITY & IMMIGRATION AND** ) | |
| **CUSTOMS ENFORCEMENT, et al.,** ) | |
| ) | |
| **Respondents.** ) | |

## MEMORANDUM OPNION

This is an action on a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. (Doc. 1).[1] Petitioner, Max T. Mehighlovesky, contends that he is being illegally detained pending his removal from the United States under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.* (Doc. 1 ("Pet.")). For the reasons that follow, the court concludes that the petition is due to be denied.

**I.   BACKGROUND**

Petitioner alleges that he was born in the United States to a "Russian family" and that he and his family went back to what was then the Soviet Union two months later. (Pet. ¶¶ 30, 40). Petitioner admits, however, that he does not have an American birth certificate and that he has never applied for United States citizenship. (Pet. ¶ 30). He further asserts that he is "currently stateless." (*Id.*) The Government alleges, however, that Petitioner is a Russian citizen and that he has been in

---

[1] References herein to "Doc(s). __" are to the document numbers assigned by the Clerk of the Court to the pleadings, motions, and other materials in the court file, as reflected on the docket sheet in the court's Case Management/Electronic Case Files ("CM/ECF") system. Pinpoint citations are to the page of the electronically filed document in CM/ECF, which may not correspond to pagination on the "hard copy" submitted for filing.

the country since June 27, 1996, when he entered as a nonimmigrant visitor with authorization to remain in the United States for a period not to exceed six months. (Doc. 5, Respondents' Response to Order to Show Cause ("Gov't Response") at 2; *see also* Pet. ¶ 41).

Immigration Customs Enforcement ("ICE"), an arm of the Department of Homeland Security ("DHS"), took Petitioner into custody on November 2, 2011, and soon thereafter instituted removal proceedings against him. (Pet. ¶ 43). On January 3, 2012, an Immigration Judge ("IJ") in Bloomington, Minnesota, ordered Petitioner removed to Russia for overstaying his visa, pursuant to § 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B). (*Id.* ¶¶ 30, 40). Petitioner timely moved to reconsider, but the IJ denied that motion by order entered February 22, 2012. (Doc. 14-7). Petitioner did not appeal to the Board of Immigration Appeals ("BIA"). (Pet. ¶¶ 30, 40). While in ICE custody in Minnesota, Petitioner initially filed two separate § 2241 habeas petitions for habeas relief in the United States District Court for the District of Minnesota, but those were both dismissed without prejudice in April and July 2012, respectively.

After being transferred to the Etowah County Detention Center in Gadsden, Alabama, which houses federal immigration detainees pursuant to a contract with ICE, Petitioner filed his instant § 2241 habeas petition in this court under § 2241 on January 29, 2013. After some initial difficulties, the record shows that ICE was able to obtain a travel document for Petitioner from Russian authorities on November 26, 2013. (Doc. 29-1 at 1-2, Declaration of Adam Austin ("Austin Decl.") ¶ 7; Doc. 29-1 at 14-16). ICE alleges that, on December 4, 2013, its agents attempted to remove Petitioner to Russia using the travel document provided by the Russian Federation, but he was so verbally and physically disruptive that the captain of the aircraft refused to allow Petitioner to board unless escorted by government agents to provide security for the passengers and crew. (Austin Decl.

2

¶ 8; Doc. 29-1 at 20-21).  Because no such escort had been arranged, Petitioner did not board the plane and remained in ICE custody.  (*Id.*; Doc. 29-1 at 20-21).

On March 18, 2014, Immigration Enforcement agents took Petitioner to the board another plane to effect his removal to Russia.  (*See* Doc. 33; Doc. 33-1, Declaration of Craig Lee ("Lee Decl.")).  Petitioner again resisted, insisting that ICE "had no authority to remove him" and that the "travel documents were not correct and [were] indeed fake."  (Lee Decl.)  Once at the airport, Petitioner refused to exit the vehicle.  (*Id.*)  Petitioner then again became so disruptive that he was not allowed to enter the airport interior to go to the gate.  (*Id.*)

For his part, Petitioner admits that on both occasions ICE attempted to remove him he "objected" and "refused to leave," but he claims was justified because he is not the individual identified in the travel documents and that such documents were, he maintains, "fake" or otherwise "fraudulent."  (*See* Docs. 28, 31, 39-1, 40, 41).  Once presented with a copy of the Government's filing of February 21, 2014 (Doc. 29-1), which includes the travel document that appears on its face to have been issued by Russian authorities in November 2013, Petitioner claims that the Russian and American governments are "conspiring against him ... to attempt illegal human trafficking."  (Doc. 42 at 1).

II.   **DISCUSSION**

    A.   **Claims Challenging Order of Removal**

At various times throughout his filings, Petitioner seeks to challenge the IJ's order by which he is subject to removal from the United States.  For example, he asserts that he was born in, and is thus a citizen of, the United States.  Alternatively, he contends he is entitled to asylum based upon allegations that he would be subject to religious persecution in Russia.  Generally speaking, however,

the exclusive means for judicial review of all such issues related to an order of removal under the INA is a petition for review in the appropriate court of appeals. *See* 8 U.S.C. § 1252(a)(5); 8 U.S.C. § 1252(b)(9). As a result, a district court does not possess subject matter jurisdiction to review the correctness of an order of providing for Petitioner's removal. Rather, such authority, to the extent it exists, rests exclusively with the court of appeals.[2] *See Alexandre v. United States Atty. Gen.*, 452 F.3d 1204, 1206 (11th Cir. 2006); *Linares v. Department of Homeland Sec.*, 529 Fed. App'x 983, 984 (11th Cir. 2013); *Mata v. Secretary of Dep't of Homeland Sec.*, 426 Fed. App'x 698, 699-700 (11th Cir. 2011). This same rule applies to Petitioner's claim that he is a United States national. *See* 8 U.S.C. § 1252(b)(5); *Roberts v. INS*, 372 Fed. App'x 921, 924-25 (11th Cir. 2010); *Tavarez v. Holder*, 2010 WL 227908, at *1 (S.D. Fla. Jan. 14, 2010). To the extent that Petitioner's habeas petition raises such claims, they are due to be dismissed for want of jurisdiction.

      **B.**      **Claims Challenging Arrest and Detention Prior to Order of Removal**

Petitioner also contests both his arrest by ICE agents on November 2, 2011 and his ensuing detention prior to the entry of an order of removal. (*See* Pet. ¶¶ 43, 44, 56-62). With respect to the former, Petitioner asserts that his arrest was unlawful and that such circumstance requires that he be released from custody immediately. (*Id.* ¶ 43). However, such a claim amounts to an indirect attack on his removal order which this court also lacks jurisdiction to hear under §§ 1252(a)(5) and (b)(9). *See Kapiamba v. Gonzalez*, 2009 WL 1406648, at *6 (W.D. Mich. May 19, 2009); *also cf. Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir.), *reh'g denied*, 737 F.3d 694 (11th Cir. 2013) (concluding that 8 U.S.C. § 1252(g) stripped all federal courts of jurisdiction over an alien's *Bivens*

---

[2] Here, Petitioner did not appeal the IJ's decision to the BIA. Thus, even the federal courts of appeals lack jurisdiction to review claims challenging the order of removal. *See* 8 U.S.C. § 1252(d)(1); *Xiu Ying Wu v. United States Att'y Gen.*, 712 F.3d 486, 492 (11th Cir. 2013); *Dorisme v. United States Att'y Gen.*, 203 Fed. App'x 945, 947-48 (11th Cir. 2006).

claims alleging he was unlawfully arrested by ICE agents in connection with the institution of removal proceedings). Even assuming for the sake of argument that Petitioner's arrest violated his Fourth Amendment rights (and, to be clear, the record does not support such an assertion), he is clearly wrong to suppose that such would itself entitle him to be released from custody or prevent his removal from the United States. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1039-40 (1984) ("The mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding."); *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1188-89 (N.D. Ala. 2011); *Solis-de Patino v. Pitts*, 823 F. Supp. 2d 457, 464 (W.D. Tex. 2011).

Petitioner's habeas claim challenging the legality of his confinement between the time he was arrested in November 2011 and a removal order was entered in January 2012 is also not subject to judicial review. Pending the issuance of an order of removal, Petitioner's custody by ICE officials was governed by either: (1) 8 U.S.C. § 1226(a), which generally authorizes discretionary detention in such circumstances, *see Arizona v. United States*, 567 U.S. ___, 132 S. Ct. 2492, 2505-06 (2012); *Akinruntan v. Holder*, 2013 WL 5999982, at *6 (N.D. Ala. Sep. 30, 2013); or (2) 8 U.S.C. § 1226(c), which mandates detention of certain "criminal aliens." *See Demore v. Kim*, 538 U.S. 510, 513 & n. 1 (2003). Petitioner argues that he was held illegally under § 1226(c) because he had not committed a criminal offense covered by that statute. However, following the issuance of a removal order, Petitioner's custody became governed by 8 U.S.C. § 1231, not § 1226. *See De La Teja v. United States*, 321 F.3d 1357, 1363 (11th Cir. 2003). As a result, any claims challenging his pre-removal-order confinement under § 1226 became moot and are due to be dismissed. *Id.*

### D. *Zadvydas* and Associated Due Process Claims

Finally, Petitioner claims that his continuing detention following issuance of the removal

order violates INA § 241, 8 U.S.C. § 1231, in light of *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the Due Process Clause of the Fifth Amendment. Section 1231 of Title 8 provides for a 90-day removal period calculated from the time the removal order becomes final, 8 U.S.C. § 1231(a)(1), during which time detention of the removable alien is mandatory. 8 U.S.C. § 1231(a)(2). A removable alien who is not removed during the 90-day removal period may be granted supervised release. 8 U.S.C. § 1231(a)(3). Further, the statute provides that a removable alien may be detained beyond the 90-day removal period, as follows:

> An alien ordered removed who is inadmissible under [8 U.S.C. § 1182], removable under [8 U.S.C. §§ 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) ] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in [8 U.S.C. § 1231(a)(3) ].

8 U.S.C. § 1231(a)(6). In addition, the statute also allows that the "removal period shall be extended ... and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).

In *Zadvydas*, the Supreme Court construed § 1231(a)(6) so as not to authorize indefinite detention. Rather, the Court concluded that the statute "contain[ed] an implicit 'reasonable time' limitation" subject to federal court review via a § 2241 habeas petition. 533 U.S. at 682. When a removable alien is detained beyond this reasonable time and "removal is not reasonably foreseeable, the court should hold continued detention unreasonable." *Id.* at 699. The Court adopted a six month period of presumptive reasonableness. *Id.* at 701. After the lapse of this six month period, the burden falls to the alien petitioner to show that his removal is not likely to occur in the "reasonably

6

foreseeable future." *Id.*; *Clark v. Martinez*, 543 U.S. 371 (2005). The Court concluded, however, stating that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. The Eleventh Circuit, applying *Zadvydas*, has stated that to assert a § 2241 claim an alien must show that six months have lapsed from the beginning of the removal period, and offer evidence showing that there is "no significant likelihood of removal in the reasonably foreseeable future." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1051–52 (11th Cir.2002) (per curiam).

Petitioner was subject to a final removal order for more than six months at the time he filed this habeas action. The IJ entered the removal order in Petitioner's case on January 3, 2012. Even if Petitioner did not expressly waive his right to appeal, the removal order became final no later than February 2, 2012, which marked the expiration of the 30-day period in which he might have filed a timely appeal to the BIA.[3] *See* 8 C.F.R. §§ 1241.1(b), (c); 1003.38(b); *Butt v. Holder*, 2009 WL 1035354, at *4 (S.D. Ala. Mar. 19, 2009); *Okeyo v. Attorney General of United States*, ___ Fed. App'x ___, ___, n. 1, 2014 WL 1193486 at *1 n. 1 (3d Cir. Mar. 24, 2014). Thus, Petitioner's removal order had been final for approximately one year when he filed this action on January 29, 2013.

However, Petitioner cannot at this point establish that there is good reason to believe that there is no significant likelihood that he will be removed in the reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701. "It is well established that *Zadvydas* does not apply where a detainee who holds the keys to his freedom thwarts his removal by lying or refusing to cooperate with ICE."

---

[3] Although Petitioner timely moved for reconsideration of the removal order, the IJ denied that motion on February 22, 2012, and Petitioner did not appeal. Such events did not have any effect on the finality of the removal order. *See Stone v. INS*, 514 U.S. 386, 405 (1995); *Jaggernauth v. United States Att'y Gen.*, 432 F.3d 1346, 1350-52 (11th Cir. 2005).

7

*Akande v. Hassell*, 2013 WL 5774953, at *6 (N.D. Ala. Aug. 21, 2013) (internal quotation marks and citations omitted). The record shows that travel documents have issued from Russia that would have authorized Petitioner's removal in both December 2013 and March 2014. Rather, even viewing Petitioner's more "benign" view of the facts as true, it is his own obstructionist tactics and refusal to cooperate and board the aircraft on those occasions that have been the only barrier to his removal. *See* 8 U.S.C. § 1231(a)(1)(C); *Oladokun v. United States Att'y Gen.*, 479 Fed. App'x 895, 897 (11th Cir. 2012); *Ukwu v. Holder*, 2012 WL 1946826, at *3 (N.D. Ala. Apr. 26, 2012); *Akande*, 2013 WL 5774953, at *5-6; *Wathigo v. Holder*, 2013 WL 3990678, at *1-2 (M.D. Ga. Aug. 1, 2013); *Iwuoha v. Viator*, 2014 WL 2768856, at *3 (W.D. La. Jun. 17, 2014); *Akande v. Horgan*, 2012 WL 1207217, at *1-2 (D. Mass. Apr. 9, 2012); *Jah v. Holder*, 2011 WL 6963178, at *3-4 (N.D. Fla. Dec. 28, 2011). "[Petitioner] contends that the travel document obtained for his removal ... was invalid, but 'speculation is insufficient to carry the burden of a habeas corpus petitioner.'" *Oladokun*, 479 Fed. App'x at 897 (quoting *Hall v. Head*, 310 F.3d 683, 705 (11th Cir. 2002)). Accordingly, Petitioner's habeas claims are due to be denied as they relate to his present detention.

### III.   CONCLUSION

Based on the foregoing, Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2241 is due to be denied. The record establishes that Petitioner has failed to cooperate with ICE and has been actively obstructing his removal such that he is not entitled to relief under *Zadvydas*. All of this other claims are due to be dismissed for lack of jurisdiction. A separate final order will be entered.

**DONE** and **ORDERED** this ___8th___ day of July, 2014.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE